b

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

MARTIN MAX WESTER,
Appellant

CIVIL DOCKET NO. 2:22-CV-00523

VERSUS

DISTRICT JUDGE CAIN

KILOLO KIJAKAZI,
COMMISSIONER,
Appellee

MAGISTRATE JUDGE PEREZ-MONTES

---

## REPORT AND RECOMMENDATION

Martin Max Wester ("Wester") filed applications for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Because Wester has failed to carry his burden of proving he is disabled within the meaning of the Social Security Act, the Commissioner's final decision to deny Wester benefits should be AFFIRMED.

## I.  Background

### A.  Procedural Background

Wester filed applications for SSI and DIB in April 2020, alleging a disability onset date of March 22, 2020 (ECF No. 10-1 at 227, 236) due to "bad back condition, arthritis, depression." ECF No. 10-1 at 315. Those applications were denied by the Social Security Administration ("SSA"), both initially and on reconsideration. ECF No. 10-1 at 125, 138.

A *de novo* hearing was held before an Administrative Law Judge ("ALJ") on July 22, 2021, at which Wester appeared with attorney and a vocational expert ("VE"). ECF No. 10-1 at 37. The ALJ found that Wester suffers from severe

impairments: degenerative changes to the lumbar spine, scoliosis, and chronic pain syndrome.  ECF No. 10-1 at 18.  The ALJ further found that Wester has the residual functional capacity to perform a limited range of light work that exists in substantial numbers in the nation, such as: information clerk, DOT[1] 237.367-018 (light work, SVP[2] 2, 95,900 jobs existing nationally); general office clerk, DOT 222.587-038 (light work, SVP 2, 114,000 jobs existing nationally); and order clerk, DOT 209.587-034 (light work, SVP 2, 134,000 jobs existing nationally).  ECF No. 10-1 at 21, 27.  The ALJ concluded that Wester has not been under a disability, as defined by the Social Security Act, from March 22, 2020 through the date of his decision on August 31, 2021.  ECF No. 10-1 at 28.

Wester requested a review of the ALJ' decision, but the Appeals Council declined to review it.  ECF No. 10-1 at 6.  He next filed this appeal for judicial review of the Commissioner's final decision.  Wester raises the following issues for review (ECF No. 11):

1. The ALJ erred by failing to properly weigh the medical opinions (Dr. Greathouse) and Plaintiff's testimony.

2. The ALJ did not reasonably, accurately, or logically demonstrate the un-persuasiveness of Dr. Greathouse's opinion or Plaintiff's lack of credibility.

---

[1] Dictionary of Occupational Titles.

[2] "The DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 CFR § 404.1568 and § 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT."  S.S.R. 00-4p, 2000 WL 1898704, at *3 (2000); see also 20 C.F.R. § 404.1568.

The Commissioner opposes Wester's appeal.  ECF No. 12.

### B.    Medical Evidence

In April 2018, Wester was evaluated by a physician-assistant at Tri-City Orthopaedics, in Kennewick, Washington for complaints of back pain.  ECF No. 10-1 at 456.  Wester reported back pain that began several years ago and progressively worsened, focalized in the middle and right side of his low back just above the belt line, without radiating into his extremities.  ECF No. 10-1 at 456.  Wester reported the simplest activities would cause his low back to "lock up" and his legs to "give out."  ECF No. 10-1 at 456.  Wester also reported joint pain and muscular pain for which he alternated taking Tylenol and Naprosyn.  ECF No. 10-1 at 456-57.

Wester did not recall any specific injury or trauma, but was told prior to his discharge from the military that he has Scheuermann's kyphosis.[3]  ECF No. 10-1 at 567.  Wester's prior treatment included physical therapy that did not provide much relief.  ECF No. 10-1 at 456.  Wester was working at an auto parts store where he did frequent lifting, bending, and twisting, and stood for long periods of time.  ECF No.

---

[3] "Kyphosis is a curving of the spine that causes a bowing or rounding of the back.  This leads to hunchback or slouching posture. . . . A type of kyphosis that occurs in young teens is known as Sheuermann disease.  It is caused by the wedging together of several bones of the spine (vertebrae) in a row.  The cause of this condition is unknown. . . . Pain in the middle or lower back is the most common symptom."  MEDLINEplus Health Information, Merriam-Webster Medical Encyclopedia: Kyphosis, *available at* MEDLINEplus Health Information, Merriam-Webster Medical Dictionary: Hyperostosis, *available at http://www.nlm.nih.gov/mplusdictionary.html* (a service of the U.S. National Library of Medicine and the National Institutes of Health).

3

10-1 at 456.  It was noted that Wester does not use nicotine, alcohol, or illicit drugs. ECF no. 10-1 at 457.

Wester was 5' 7" tall, weighed 155 pounds, and his blood pressure was 130/79. ECF No. 10-1 at 457.  Wester's gait was normal and his posture was normal, with level shoulders, no lateral curvature and normal lumbar kyphosis.  ECF No. 10-1 at 457.  He had paraspinous and lumbar tenderness on palpation.  ECF no. 10-1 at 457. Wester had equal and full ranges of motion in his lower extremities.  ECF No. 10-1 at 457.  Straight leg raises caused back pain.  ECF No. 10-1 at 457.  X-rays showed lumbar spondylosis at L4-5 and L5-S1 and mild dextroscoliosis with mild degenerative changes, but stable flexion and extension, no instability, and intact range of motion.  ECF No. 429, 454, 457.  Wester had mostly axial-type pain that was progressively worsening.  ECF No. 10-1 at 458.   Overall, his discs, facets, and interspinous process articulation were preserved.  ECF No. 10-1 at 454.

A subsequent MRI confirmed the mild concentric spondylitic disc displacement at L4-5 with a small central disc protrusion/extrusion that effaces the lateral recesses and descending L5 nerve roots, subtle lumbar spine dextro curvature, slightly straight lumbar lordosis, and protrusion at L5-S1 encroaching upon the descending S1 nerve roots.  Wester did not have effacement, spinal canal stenosis, or high-grade foraminal narrowing at any level.  ECF No. 10-1 at 454-55.  Wester walked with a normal steady gait, and showed no gross focal motor deficits.  ECF No. 10-1 at 454. Wester was assessed with lumbar spondylosis at L4-5 and L5-S1 with mostly axial-

type pain.  Wester indicated he would like to avoid surgical intervention at that time, and was interested in the possibility of interventional injections and pain management.  ECF No. 10-1 at 455.

Wester was next evaluated in June 2018 by Dr. Kenneth Breeden, an orthopaedist, for pain management.  ECF No. 10-1 at 449.  Wester complained of lumbar pain and left knee pain, and said his symptoms were aggravated by bending, daily activities, standing and walking, and improved with ice, pain medication, and rest.  ECF No. 10-1 at 449.  Wester complained that his lumbar pain radiated down into his left knee.  ECF No. 10-1 at 449.  He walked stiff-legged and stated he was able to walk only 10 to 20 minutes before his back and knee pain increased.  ECF No. 10-1 at 449.

Wester also reported a left knee surgery several years ago.  ECF No. 10-1 at 449.  Wester was 5'8" tall, weighed 155 pounds, and his blood pressure was 127/77.  ECF No. 10-1 at 449.  He had paraspinal muscle tenderness in the lumbar region, but no fasciculations, atrophy, tremors, or joint tenderness.  ECF No. 10-1 at 450-51.  He also had mild muscle spasm in his back, but his paraspinous muscle tone was normal.  ECF No. 10-1 at 451.  Wester walked with a limp, but his posture was normal.  ECF No. 10-1 at 451.

Dr. Breeden diagnosed chronic pain syndrome, pain in the left knee, low back pain, radiculopathy-lumbar region, and unilateral primary osteoarthritis in the left knee.  ECF No. 10-1 at 453.  Wester expressed his desire to improve his pain intensity,

be able to work a full day and perform activities of daily living, and decrease or stop opioid pain medications. ECF No. 10-1 at 453. Dr. Breeden prescribed Tramadol and Gabapentin. ECF NO. 10-1 at 453. Wester was also prescribed a knee stabilizer brace due to a torn meniscus and osteoarthritis of the left knee. ECF No. 10-1 at 453.

In July 2018, Dr. Breeden saw Wester for medication management. ECF No. 10-1 at 447. Dr. Breeden stated he looked at the Washington Prescription Monitoring Program and saw that Wester did not have multiple opioid prescribers. ECF No. 10-1 at 447. Dr. Breeden prescribed Gabapentin (to be slowly increased), Tramadol, and Norco. ECF No. 10-1 at 448.

In August 2019, Wester complained to Dr. Breeden that he is not able to function throughout the day on the current medication regimen with 50% pain relief. ECF No. 10-1 at 445. Wester was still taking Aleve and Tylenol with the Tramadol to get 50% pain relief. ECF No. 10-1 at 445. Wester stated the Tramadol did not relieve his pain. ECF No. 10-1 at 445. Dr. Breeden prescribed a larger dose of Gabapentin (to be slowly increased), Norco, and Tramadol. ECF No. 10-1 at 445-46.

In early September 2018, Wester reported 10% pain relief. ECF No. 10-1 at 425. Dr. Breeden prescribed a larger dose of Gabapentin, as well as Norco and Tramadol. ECF No. 10-1 at 426.

In late September 2018, Wester told Dr. Breeden he was able to function throughout the day on his current medication regimen with 30% pain relief, and he was slowly increasing his Gabapentin. ECF No. 10-1 at 443, 526. Dr. Breeden

prescribed a larger dose of Gabapentin, Norco, and Tramadol. ECF No. 10-1 at 443-44, 526-27.

In November 2018, Wester reported 5% pain relief from his medication regimen. ECF No. 10-1 at 441, 520. Dr. Breeden found numerous tender points with palpation over his lumber paraspinal muscles, but normal gross motor strength in all extremities. ECF No. 10-1 at 441, 520. Dr. Breeden prescribed larger doses of Gabapentin, Norco, and Tramadol. ECF No. 10-1 at 442, 521.

In December 2018, Wester reported 50% pain relief, stating his pain had improved. ECF No. 10-1 at 439, 516. Dr. Breeden refilled Wester's medications. ECF No. 10-1 at 440, 516-17.

In January 2019, Wester stated he had only 20% pain relief, but was able to enjoy the holidays. ECF No. 10-1 at 435, 518. Wester also reported that he had changed insurance companies and that he was required to go without insurance and opioid medications for a period. ECF No. 10-1 at 435, 518. So he took a lot of Ibuprofen and had some withdrawal symptoms, but did better after he resumed his pain medications. ECF NO. 10-1 at 435, 518. Wester again had numerous tender points with palpation over the lumber paraspinal muscles. ECF No. 10-1 at 435, 518. Dr. Breeden prescribed the same medications. ECF No. 10-1 at 436, 519.

In February 2019, Wester's lumbar pain was the same, and his medications gave him 20% relief. ECF No. 10-1 at 433, 509. Dr. Breeden prescribed Norco for breakthrough pain, Tramadol, and Mobic. ECF NO. 10-1 at 434, 509.

7

In March 2019, Wester reported 50 % pain relief and the ability to function throughout the day.  ECF No. 10-1 at 431.  Dr. Breeden continued his prescriptions for Norco, Tramadol, and Mobic.  ECF No. 10-1 at 432.

In April 2019, Wester reported 50% pain relief, stating that his lumbar pain had been well-controlled and had decreased since his last visit.  ECF No. 10-1 at 513, 560.  Wester was continued on Norco, Tramadol, Mobic, and Gabapentin.  ECF No. 10-1 at 513, 560.

In May and June 2019, Wester had 80% pain relief and well-controlled lumbar pain. ECF No. 10-1 at 514-15, 561-62.  Dr. Breeden continued Wester's prescriptions for Norco, Tramadol, and Mobic.  ECF No. 10-1 at 514-15, 561-62.

In August 2019, Wester reported 60% pain relief, with well-controlled lumbar pain. ECF No. 10-1 at 522, 563.  Wester was diagnosed with chronic pain syndrome, low back pain, and radiculopathy in the lumbar region.  ECF No. 10-1 at 522, 563. Dr. Breeden prescribed Norco, Gapabentin, and Mobic.   ECF No. 10-1 at 522, 563.

In September 2019, Wester had 70% pain relief, with constant lumbar spinal pain that was stable and well-controlled.  ECF No. 10-1 at 523, 564.  Dr. Breeden refilled Wester's Norco, Gabapentin, and Mobic prescriptions.  ECF No. 10-1 at 523, 564.

In November 2019, Wester's pain relief was 60%; he had numerous tender points over the lumbar paraspinal muscles; and his gross motor strength was normal

in all extremities.  ECF No. 10-1 at 524, 565.  Wester's prescriptions for Norco, Gabapentin, and Mobic were continued.  ECF No. 10-1 at 524, 565.

In January 2020, Wester stated he had 80% pain relief and was able to function throughout the day, despite some lower back pain.  ECF No. 10-1 at 506, 571.  Dr. Breeden prescribed Norco, Gabapentin, and Mobic.  ECF No. 10-1 at 506, 571.  Wester made the same report in February and March 2020, and received the same prescriptions.  ECF No. 10-1 at 507, 510, 573, 575.

Wester moved to Louisiana and, in June 2020, was evaluated by Dr. Stewart Greathouse, a family medicine doctor.  ECF No. 10-1 at 540.  Wester reported chronic back pain due to degenerative joint disease and scoliosis, for which he had been on a 10 pound weight-lifting restriction, and was taking Gabapentin, meloxicam (Mobic), and hydrocodone (Norco).  ECF No. 10-1 at 540.  Wester reported he was not working because he was disabled.  ECF No. 10-1 at 540.  Wester was 5'7" tall, weighed 165 pounds, and his blood pressure was 118/68.  ECF No. 10-1 at 541.  His gait was normal and his mild scoliosis was noted.  ECF No. 10-1 at 541-42.

Dr. Greathouse diagnosed chronic pain syndrome, scoliosis, and low back pain (dorsalgia).  ECF No. 10-1 at 542.  Dr. Greathouse continued Wester's prescriptions for Gabapentin, meloxicam (Mobic), and Tramadol, and stated he could refill the hydrocodone (Norco) only once.  ECF No. 10-1 at 542.  Wester reported his pain was better with the Tramadol than any other narcotic he had taken.  ECF No. 10-1 at 542.

9

In July 2020, Wester reported that the Gabapentin helped "quite a bit" and the Tramadol worked much better than the hydrocodone, although he still used hydrocodone in the evening to help him rest. ECF No. 10-1 at 544. Wester was pursuing "disability" and said he found is difficult to sit or stand for more than 30 minutes at a time. ECF No. 10-1 at 544. Dr. Greathouse refilled Wester's prescriptions, including hydrocodone since he was limiting its use to once per day. ECF No. 10-1 at 545.

In August 2020, Wester reported he was doing well, using hydrocodone only once a day in the evening, and was happy with his pain management. ECF No. 10-1 at 546. Dr. Greathouse refilled Wester's prescriptions. ECF No. 10-1 at 546.

In November 2020, Wester's pain was well-controlled; and he was limiting his use of hydrocodone. ECF No. 10-1 at 548. Dr. Greathouse refilled his prescriptions. ECF No. 10-1 at 548.

In June 2020, Dr. Susan Daugherty, Ph.D., evaluated Wester's medical records for a psychiatric review technique form and concluded that Wester did not have any medically determinable mental impairments. ECF No. 19-1 at 79. Also in June 2020, Dr. Bonnie Lammers evaluated Wester's medical records for a physical residual functional capacity assessment. ECF No. 10-1 at 80. Dr. Lammers found that Wester has a severe spine disorder (primary) and a severe dysfunction of major joints (secondary) that cause pain. ECF No. 10-1 at 90-91. Dr. Lammers found that Wester: can only occasionally lift/carry up to 20 pounds and can frequently lift/carry up to 10

10

pounds; can stand/walk up to six hours in an eight hour day, can sit up to 6 hours in an eight hour day; and can do unlimited pushing and pulling (except as limited by lift/carry restrictions).  ECF No. 10-1 at 80-81, 91-92.  Dr. Lammers concluded that Wester's physical limitations do not prevent him doing his past relevant work.  ECF No. 10-1 at 83.

In January 2021, Dr. Jason Gunter, Ph.D., reviewed Wester's medical records and filled out a Psychiatric Review Technique form that concluded that Wester does not have any mental condition or limitations.  ECF No. 10-1 at 103.

Also in January 2021, Dr. James Blalock, M.D., reviewed Wester's medical records for a physical residual functional capacity assessment.  Dr. Blalock found that Wester can: only occasionally lift/carry up to 20 pounds; frequently lift/carry up to 10 pounds; stand/walk up to 6 hours in an 8-hour day; sit up to 6 hours in an 8-hour day; and do unlimited pushing and pulling with hands or feet except as limited by his lift/carry restrictions.  ECF No. 10-1 at 105-06.  Dr. Blalock noted that Wester's mild to moderate limitations are due to chronic pain from lumbar degenerative joint disease and scoliosis.  ECF No. 10-1 at 107.

In February 2021, Wester was evaluated by a nurse-practitioner.  ECF No. 10-1 at 579.  He was 5' 8" tall, weighed 157 pounds, and his blood pressure was 119/79.  ECF No. 10-1 at 579.  Wester was found to suffer from degenerative disc disease at L5-S1, lumbar back pain, and radiculopathy due to lumbar intervertebral disc disorder.  ECF No. 10-1 at 579-80.

In February and March 2021, Dr. Greathouse noted that Wester was "doing okay overall" and minimizing his use of hydrocodone.  ECF No. 10-1 at 589, 591.  Dr. Greathouse continued Wester's medications.  ECF No. 10-1 at 590, 592.

In May 2021, Dr. Greathouse noted that Wester can: lift/carry less than 10 pounds, both occasionally and frequently; stand/walk less than 2 hours in an 8-hour day; must periodically alternate sitting and standing to relieve pain and discomfort; and can reach frequently, handle continuously, and finger continuously.  ECF No. 10-1 at 577.  Dr. Greathouse noted that chronic disc disease is exacerbated by standing or sitting in any one position for an extended period of time.  ECF No. 10-1 at 577. Dr. Greathouse further noted that: Wester experiences side effects from his medications that periodically cause difficulty in concentrating; he would have to take a break due to symptoms once every 1 to 2 hours; and would miss work, be late for work, or leave work early due to his symptoms about 3 to 4 times per week.  ECF No. 10-1 at 577.

In July 2021, Dr. Greathouse filled out a residual functional capacity form, stating that Wester has pain caused by chronic pain syndrome, degenerative disc disease, and lumbar radiculopathy.  ECF No. 10-1 at 593.  Side effects of Wester's medications include dizziness and alteration in awareness or ideation.  ECF No. 10-1 at 593.  Wester can: sit for up to 30 minutes at a time; stand for up to 10 minutes at a time; needs to lie down about 1 hour per day; stand/walk less than 2 hours in an 8-hours day; and sit for 4 to 5 hours in and 8-hour day, with alternating sitting and

standing. ECF No. 10-1 at 593. Dr. Greathouse stated that Wester needs a job that permits shifting positions at will between sitting, standing, or walking, and permits unscheduled breaks or includes periods of walking around during an 8-hour day. ECF Nos. 10-1 at 593.

Additionally, Wester can: occasionally lift/carry less than 10 pounds, and should never lift/carry ten pounds or more; has a 50% limitation in reaching with both arms; stoop for 5% of an 8-hour day; crouch for 5% of an 8-hour day; kneel for 10 % of an 8-hour day; and climb stairs for 10% of an 8-hour day. ECF No. 10-1 at 594. Dr. Greathouse concluded that Wester's productivity level was 75% or less than that of a healthy individual. ECF No. 10-1 at 594. His impairments are likely to produce "bad days" that cause absences from work four times per month. ECF No. 10-1 at 594.

### C.    2021 Administrative Hearing

Wester appeared before an ALJ with his attorney and a VE via telephone. ECF No. 10-1 at 37.

Wester testified that he cannot stand very long behind the counter at a parts store as he used to do. ECF No. 10-1 at 46. He is unable to function well because his medications impair his ability to focus. ECF No. 10-1 at 46. Before Wester worked in retail, he worked as an insurance agent. ECF No. 10-1 at 49. Wester stated he cannot pass the test for his securities license through the insurance program he was in because his medications keep him groggy. ECF No. 10-1 at 47. He also cannot lift and carry things, or stand or sit for very long. ECF No. 10-1 at 47. Wester testified

that his last employer had to have another employee carry things for him. ECF No. 10-1 at 47.

Wester testified that when he became unable to continue to work as a manager in a retail store, he tried to work only as a counter clerk, but could not do that because he could not lift and carry auto parts. ECF No. 10-1 at 48-49. Wester testified that, as a manager (2007-2019), he had the authority to hire, fire, and discipline people, and he supervised eight employees, but he primarily worked at the counter. ECF No. 10-1 at 48-49. Wester testified that his last job was given to him to try to help him, but he was not able to work. ECF No. 10-1 at 61.

Wester testified that the heaviest thing he can lift/carry is a coffee cup. ECF No. 10-1 at 50. Anything heavier tugs on his back and causes breakthrough pain, and he becomes unable to function. ECF No. 10-1 at 50.

Wester testified that he can walk for 15 to 20 minutes, but he carries a cane or stick to lean on. ECF No. 10-1 at 51.

Wester testified that he can sit for up to 30 minutes, then he has to get up and walk. ECF No. 10-1 at 51. He spends a lot of time getting up and down. ECF No. 10-1 at 51. Putting his feet up on a chair or ottoman for five minutes every hour helps him sit longer. ECF No. 10-1 at 52.

Wester lives with his wife. ECF No. 10-1 at 52. His wife works, and vacuums, cooks, and mops. ECF No. 10-1 at 51-52. Wester tries to do a little bit of dishwashing, laundry, or folding clothes every day. ECF No. 10-1 at 52. He has to take a ten

14

minute break every ten minutes.  ECF No. 10-1 at 54.  Wester goes grocery shopping with his wife, but has to stop and sit "every so often," and cannot load the groceries into the car or carry them into the house.  ECF No. 10-1 at 54.

Wester bathes and shaves every morning, but it is taking him longer and longer to do so.  ECF No. 54-55.  He has a shower chair to sit in.  ECF No. 10-1 at 55.

Wester testified that, after he bathes in the morning, he goes online and checks emails and checks on his family in Washington and Missouri.  ECF No. 10-1 at 57. Then he walks his dogs.  ECF No. 10-1 at 57.  Wester's wife works 12-hour shifts, and drives and hour each way, so she is gone 14 hours each day she works.  ECF No. 10-1 at 57.  While she is gone, Wester tries to work in the yard, do laundry, wash dishes, walk the dogs, and putter around his shop.  ECF No. 10-1 at 57.  After trying to work, he is tired so he sits and rests for a while.  ECF No. 10-1 at 57-58.  Wester does a lot of sitting, standing, walking, and back to sitting throughout the day.  ECF No. 10-1 at 58.  Wester may put a movie on and watch a little at a time, but he cannot watch a movie all the way through.  ECF No. 10-1 at 58.

Wester is not able to focus for more than 30 minutes at a time, so he does not like to drive.  ECF No. 10-1 at 56.  He also does not like to ride in the car because he feels all of the bumps in the road.  ECF No. 10-1 at 56.

Wester tries to do some work outside – he sits in a wheelchair and weed-eats or sits on the ground and works.  ECF No. 10-1 at 56.  Wester also testified that he does not reach and put dishes away very much because his grip is not very good, but

15

most of the dishes are stored at shoulder level.  ECF No. 10-1 at 60.  There is also a step stool in the kitchen for things stored higher.  ECF No. 10-1 at 60.  Wester's wife usually reaches the higher things in the kitchen.  ECF No. 10-1 at 60.

Wester is in pain management.  ECF No. 10-1 at 58.  Physical therapy did not help.  ECF No. 10-1 at 58.  One surgeon told him he could do three successive surgeries which would take seven years or he could go into pain management, and Wester chose pain management.  ECF No. 10-1 at 58.  Pain management alleviates a lot of Wester's pain, but the medications reduce his ability to function.  ECF No. 10-1 at 58.  He has to see his pain management doctor every two months.  ECF No. 10-1 at 59.  Wester also testified that he has arthritis starting to develop in his hands, but it is not bad enough to require medication.  ECF No. 10-1 at 59.

The VE testified that Wester's past work as an auto parts counter clerk (DOT 279.357-062) was light, skilled work, SVP 5.  ECF No. 10-1 at 62.  Wester's past work as a store retail manager (DOT 185.167-46) was light, skilled work, SVP 7.  ECF No. 10-1 at 63.  However, Wester performed that job as a composite job with the counter clerk job, so as performed it was heavier than light work.  ECF No. 10-1 at 63-64.  Wester's past work as an insurance agent (DOT 250.257-010) was light, skilled work, SVP 6.  ECF No. 10-1 at 64.

The VE also testified that employers do not tolerate employees being off-task 15% of the time.  ECF No. 10-1 at 64.  And employers' tolerance for sick days is less than one day per month.  ECF No. 10-1 at 65.

The ALJ posed a hypothetical to the VE involving an individual with the same education and work history as Wester, who can perform light work with a sit/stand/stretch option that allows him to shift from a standing position to a seated position and/or to stretch at intervals of about 30 minutes, provided he does not leave his workstation and the shifting of positions results in him being off task no more than one to two minutes with each position shift. ECF No. 10-1 at 65. The individual also: cannot climb ladders, ropes and scaffolds; cannot crawl; can only occasionally climb ramps and stairs; can only occasionally  stoop, kneel, and crouch; cannot reach overhead, but is otherwise capable of frequently reaching in all directions with both upper extremities; can have no more than occasional exposure to vibration; and cannot do work that requires driving or have more than occasional work-related exposure to hazards such as unprotected heights and unguarded moving machinery. ECF No. 10-1 at 65-66.

The VE testified that such an individual would be able to perform Wester's past work as an insurance agent. ECF No. 10-1 at 66. Such an individual would also be able to work as: an information clerk, DOT 237.367-018 (unskilled, light work; SVP 2; 95,900 jobs existing in the national economy); a general office clerk, DOT 222.587-038 (unskilled, light work; SVP 2; 114,000 jobs in the national economy); and a stock or order clerk, DOT 209.587-034 (unskilled, light work; SVP 2; 134,000 jobs existing in the national economy). ECF No. 10-1 at 67. The VE testified that the individual has transferable skills such as scheduling, ordering supplies, operating a

computer, inventory, providing customer service and information, and operating a cash register. ECF No. 10-1 at 67-68. Ordering supplies transfers from the retail manager job into the order clerk job. ECF No. 10-1 at 68. Operating a computer and scheduling tasks transfer to general office clerk work. ECF No. 10-1 at 68. Customer service and providing information would transfer to an information clerk job. ECF No. 10-1 at 69.

The VE further testified that, if an individual had to elevate their feet at waist level every hour for about ten minutes, the person would not be able to maintain full-time employment because light level work would require the person to remove himself from his work area and go sit somewhere. ECF No. 10-1 at 69-70.

### D.   ALJ's Findings

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a). The sequential process required the ALJ to determine whether Wester (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work he did in the past; and (5) can perform any other type of work. If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Greenspan v. Shalala*, 38

F.3d 232, 236 (5th Cir. 1994), *cert. den.*, 514 U.S. 1120 (1995) (citing *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

Under the regulations, the claimant bears the burden of proof on the first four steps of the sequential analysis.  Once this initial burden is satisfied, the Commissioner then bears the burden of establishing that the claimant is capable of performing work in the national economy.  *See Greenspan*, 38 F.3d at 237.

Here, the ALJ found that Wester has not engaged in substantial gainful activity since March 22, 2020, his alleged onset date, and that he meets the insured status requirements through December 31, 2024.  ECF No. 10-1 at 18.  The ALJ further found that Wester has severe impairments of degenerative changes to his lumbar spine, scoliosis, and chronic pain syndrome, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1.  ECF No. 10-1 at 18-19.

The ALJ further found that Wester has the residual functional capacity to perform light work with the following limitations: he requires a sit/stand/stretch option that allows him to shift from a standing to sitting position and/or to stretch at intervals of about 30 minutes, provided he does not leave his workstation and is not off-task more than 1-2 minutes with each position shift; he cannot climb ladders, ropes, or scaffolds; he cannot crawl; he can only occasionally climb ramps and stairs; he can only occasionally stoop, kneel, and crouch; he cannot reach overhead but otherwise can frequently reach in all directions with his upper extremities; he can

have no more than occasional exposure to vibrations; he cannot drive at work; and he can have no more than occasional work-related exposure to hazards such as unprotected heights and unguarded moving machinery. ECF No. 10-1 at 21. Thus, at Step 4, the ALJ found that Wester can do his past relevant work as an insurance agent. ECF No. 10-1 at 25.

In an alternative analysis, at Step 5, the ALJ also found that Wester can do other light work that exists in significant numbers in the national economy, such as information clerk, DOT 237.367-018 (unskilled, light work; SVP 2; 95,900 jobs existing in the national economy); router, DOT 222.587-038 (unskilled, light work; SVP 2; 114,000 jobs in the national economy); and marker, DOT 209.587-034 (unskilled, light work; SVP 2; 134,000 jobs existing in the national economy).[4] ECF No. 10-1 at 27.

The ALJ then found that from March 22, 2020 through the date of his decision on August 3, 2021, Wester was still able to perform his past relevant work as an insurance agent and, therefore, was not disabled. ECF No. 10-1 at 28.

## II.    Law and Analysis

### A.    Scope of Review

The court reviews the Commissioner's decision to deny disability benefits by "determining whether substantial evidence in the record supports the decision and

---

[4] The ALJ found the VE mis-titled the job of router as general office clerk, and mis-titled the job of marker as general office clerk. ECF No. 10-1 at 27.

whether proper legal standards were used in evaluating the evidence." *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994). For the evidence to be substantial, it must be "more than a scintilla and less than a preponderance," and "of such relevance that a reasonable mind would accept it as adequate to support a conclusion." *Falco*, 27 F.3d at 162 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "[T]he substantial evidence test does not involve a simple search of the record for isolated bits of evidence which support the [Commissioner's] decision. [A Court] must consider the record as a whole, and the substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986) (citations omitted).

"[A court's] review of the ALJ's determination is 'highly deferential.'" *Garcia v. Berryhill,* 880 F.3d 700, 704 (5th Cir. 2018) (citing *Perez v. Barnhart,* 415 F.3d 457, 464 (5th Cir. 2005)). "[The court] ask[s] only whether substantial evidence supports the decision and whether the correct legal standards were employed." *Garcia,* 880 F.3d at 704 (citing 42 U.S.C § 405(g); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)). "Substantial evidence is merely enough that a reasonable mind could arrive at the same decision; though the evidence must be more than a scintilla, it need not be a preponderance." *Miller v. Kijakazi*, 2023 WL 234773, at *1 (5th Cir. 2023).

"[The court] will not 're-weigh the evidence' nor, in the event of evidentiary conflict or uncertainty, will we 'substitute our judgment for the Commissioner's, even

if we believe the evidence weighs against the Commissioner's decision.'" *Id.* A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the factfinder. *See Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987); *Dellolio v. Heckler,* 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is up to the Commissioner and the ALJ, rather than a court. *See Allen v. Schweiker,* 642 F.2d 799, 801 (5th Cir. 1981); *see also Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

A court does have authority, however, to set aside factual findings that are not supported by substantial evidence and to correct errors of law. *See Dellolio*, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *See Johnson v. Bowen*, 864 F.2d 340 (5th Cir. 1988); *Dellolio*, 705 F.2d at 125.

**B.** <u>**Substantial evidence supports the ALJ's finding that Wester can do a limited range of light work.**</u>

   **1.** <u>**The ALJ adequately explained his decision to give less weight to Dr. Greathouse's opinion.**</u>

Wester contends the ALJ failed to properly weigh the medical opinion of Dr. Greathouse and Plaintiff's testimony. Wester argues the ALJ did not reasonably, accurately, or logically demonstrate the un-persuasiveness of Dr. Greathouse's opinion or that Plaintiff's testimony is not credible.

22

"An 'ALJ is responsible for determining an applicant's residual functional capacity.'" *Webster*, 19 F.4th at 718 (*quoting Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)); *see also Miller*, 2023 WL 234773, at *4. In doing so, the ALJ "examines the medical evidence in the record, including the testimony of physicians and the claimant's medical records." *Id.* "Notably, though, ALJs are no longer required to give controlling weight to a treating physician's opinion, as was mandated by federal regulations and our caselaw in the past." *Id.* Instead, an ALJ considers a list of factors articulated in 20 C.F.R. § 404.1520c to decide "what weight, if any, to give to a medical opinion." *Id.*

Under the new regulations, rather than assigning weight to the medical opinions, the Commissioner must articulate "how persuasive" he finds the medical opinions. 20 C.F.R. § 416.920c(b). And the Commissioner's consideration of the persuasiveness of medical opinions is guided by the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); (4) specialization of the medical source; and (5) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c)(1)-(5); 20 C.F.R. § 416.920c(c)(1)-(5). The fact that a medical source actually examined the claimant or specializes in an area germane to the claimant's medical issues are not

primary or dispositive considerations in assessing the medical opinion. *See* 20 C.F.R. § 404.1520c(c); 20 C.F.R. § 416.920c(c).

"Supportability" and "consistency" are the most important factors. 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2). The ALJ must explain these factors, but need not expound on the remaining three unless the ALJ finds that two or more non-identical medical opinions are equally well-supported and consistent with the record. 20 C.F.R. § 416.920c(b)(2)-(3).

In deciding to assign less weight to Dr. Greathouse's opinion, the ALJ stated:

> After carefully reviewing the record as a whole, I reviewed the opinions from the claimant's medical source, Stewart Greathouse, M.D., and find them to be minimally persuasive.
>
> In July 2021, Dr. Greathouse wrote that the claimant's symptoms frequently interfered with his ability to pay attention and concentrate, he could sit for 30 minutes at a time, he could stand for ten minutes at a time, he needed to lie down for one hour a day, he could stand/walk for less than two hours a day, he could sit for between four and five hours a day, he must alternate between sitting and standing, he did not need an assistive device, he needed unscheduled breaks, he could occasionally lift/carry less than ten pounds, he should never lift more than ten pounds, he could reach 50% of the time with both arms, he could stoop and crouch 5% of the time, he could kneel and climb stairs 10% of the time, he would be productive for 75% or less of the time, and he would miss work three times a month. Both of Dr. Greathouse's statements are fill-in-the-blank and check-box forms with little to no explanation of his conclusions. Additionally, his own treatment notes do not support his recommendations. In June 2020, he noted the claimant had a normal gait and station and only mild scoliosis and recommended only continued pain management. In November 2020, the claimant told Dr. Greathouse that his pain was well-controlled and he was "doing very well overall." In February 2021, the claimant continued to do well with medication management of his pain. The objective testing and treatment notes from the claimant's other providers are also inconsistent with Dr.

24

Greathouse's recommendations. The record is more consistent with finding the claimant capable of performing light work in a setting with a sit/stand/stretch option, but he is unable to drive for work, reach overhead, crawl, and climb ladders, ropes, or scaffolds.

The ALJ adequately articulated his reasons for assigning less weight to Dr. Greathouse's opinions as to Wester's residual functional capacity. The ALJ is not required to accord special weight or significance to a physician's opinion that a claimant is disabled or unable to work, and the ALJ can properly reject a physician's conclusion of disability as determinative on the ultimate issue. *See Frank v. Barnhart,* 326 F.3d 618, 620 (5th Cir.2003); *Tamez v. Sullivan,* 888 F.2d 334, 336, n. 1 (5th Cir.1989); *see also Barajas v. Heckler,* 738 F.2d 641, 645 (5th Cir.1984) (a treating physician's statement that an individual is disabled does not mean that she is disabled within the meaning of the Social Security Act); *Ring v. Colvin*, 2015 WL 4775327, at *7 (S.D. Miss. 2015). Wester thus has not shown that, if the ALJ had given further explanation, he would have adopted additional limitations. *See J.L.J. v. Commissioner of Social Security,* 2023 WL 6209424, at *5 (W.D. La. 2023), *adopting report and recommendation,* 2023 WL 6209440 (W.D. La. 2023) (citing *Miller v. Kijakazi,* 2023 WL 234774, at * (5th Cir. 2023)).

2.  <u>**The ALJ adequately explained his finding that Wester is not disabled by pain.**</u>

The ALJ's finding that Wester can perform his past relevant work indicates the ALJ's conclusion that Wester did not meet his burden of proving that he could not

return to such work.  Wester argues that he cannot work due to pain.  Wester contends the ALJ "arbitrarily elevate[d]" objective evidence over subjective evidence.

Although a claimant's assertion of pain or other symptoms must be considered by the ALJ, 42 U.S.C. § 423(d)(5)(A) requires that a claimant produce objective medical evidence of a condition that reasonably could be expected to produce the level of pain alleged.  The mere existence of pain does not automatically create grounds for disability, and subjective evidence of pain will not take precedence over conflicting medical evidence.  *See Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989) (*citing Owens v. Heckler*, 770 F.2d 1276, 1281 (5th Cir. 1985)); *see also Weary v. Astrue*, 288 Fed. Appx. 961, 967 (5th Cir. 2008) (citing *Harper,* 887 F.2d at 96); *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2000).  A claimant's symptoms, including pain, diminish a claimant's capacity for basic work activities to the extent that the claimant's alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence.  *See* 20 C.F.R. § 404.1529(c)(4).  Although severe pain can constitute a non-exertional impairment, pain is a *disabling* condition only when it is constant, unremitting, and wholly unresponsive to therapeutic treatment.  *See Chambliss*, 269 F.3d at 522 (citing *Falco*, 27 F.3d at 163).[5]

---

[5] Unremitting pain sometimes results in observable signs such as drawn features, expressions of suffering, significant weight loss, and poor overall health.  *See Chaney v. Califano,* 588 F.2d 958, 960 (5th Cir. 1979); *see also Barajas,* 738 F.2d at 644 ("[I]t is clear that not all pain is disabling.  There is no evidence of severe, continuous pain such as weight loss or local musculoskeletal or neurological impairment to support her contention of constant,

The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ, who has had an opportunity to observe whether the person seems to be disabled. *See Elzy v. Railroad Retirement Bd.*, 782 F.2d 1223, 1225 (5th Cir. 1986); *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983); *see also Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991); *Wren v. Sullivan*, 925 F.2d 123, 128-29 (5th Cir. 1991). The ALJ's decision on the severity of pain is entitled to considerable judicial deference. *See James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986); *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987). Hence, the law requires the ALJ to make affirmative findings regarding a claimant's subjective complaints and articulate his reasons for rejecting any subjective complaints.[6] *See Falco v. Shalala*, 27 F.3d 162, 163-64 (5th Cir. 1994); *see also Herrera v. Commissioner of Social Security,* 406 Fed. Appx. 899, 905 (5th Cir. 2010) (citing *Falco,* 27 F.3d at 163-64).

---

debilitating pain."); *Hames v. Heckler*, 707 F.2d 162, 166 (5th Cir. 1983) ("The absence of any sign of severe or continuous pain as manifested by discernible and observable criteria such as significant weight loss, impairment of general nutrition, or other local morbid changes which would likely be present if this Plaintiff were under constant and severe pain, is also significant.").

[6] Wester also complains the ALJ failed to consider his "willingness to work" as "required" by 20 C.F.R. § 404.1529(c)(3) and SSR 16-3p. However, § 404.1529(c)(3) refers only to "information about your prior work record," while SSR 16-3p(b) refers to consideration of a claimant's "efforts to work." Moreover, the cases cited by Wester cite other circuits for the proposition that a claimant with a good work record is entitled to substantial credibility when claiming that he can no longer work due to a disability. That rule has not been adopted by the Fifth Circuit. *See Carroll v. Colvin*, 2016 WL 7757275, at *4 (M.D. La. 2016), *report and recommendation adopted,* 2017 WL 151393 (M.D. La. 2017); *see also Walters v. Social Security Administration,* 2019 WL 3928793, at *8 (E.D. La. 2019).

The ALJ made the following findings as to Wester's pain and credibility (ECF

No. 10-1 at 22-25):

> After careful consideration of the evidence, I find the claimant's medically determinable impairments could reasonably be expected to produce the . . . alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. Accordingly, these statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence. . . .
>
> In terms of objective medical evidence, the medical record supports the claimant's assertion his impairments limit his ability to work. The medical evidence does not support the claimant's contention his impairments prevent him from working at all. . . . The claimant was taking medication to manage his back pain in September 2018. The claimant reported 20% pain relief with medication and stated he could function throughout the day in February 2019.
>
> By January 2020, the claimant reported 80% pain relief with his current medications and stated he could still function throughout the day. On examination, he had numerous tender points with palpation over the lumbar spine, but he had normal strength. The claimant reported back pain in June 2020, but a normal gait with mild scoliosis and he was instructed to continue with his pain medications with some adjustments. He continued to report that his medications were helping, but said he had problems sitting and standing for more than 30 minutes in July 2020. In August 2020, the claimant reported doing well since his last visit with no complained, said he had no current problems, and stated he was "very happy" with his current pain management. He continued to report doing very well overall and stated his pain was well-controlled with medication. During a February 2021 examination, the claimant had limited range of motion of his back, but had full strength in his extremities. In mid-February 2021, the claimant's physician noted chronic pain syndrome, but the claimant stated he was doing "ok" overall with no problems. During a May 2021 check-up, his physician noted the claimant has been fairly stable on medication for the past

three years and the claimant reported he was "doing ok" with his current level of pain management.

Limiting the claimant to a restricted range of light exertional work sufficiently accounts for the limitations caused by his degenerative changes to the lumbar spine, scoliosis, and chronic pain syndrome. . . .

After carefully reviewing the record as a whole, I reviewed the opinions from the claimant's medical source, Stewart Greathouse, M.D., and find them to be minimally persuasive.   In May 2021, Dr. Greathouse wrote that the claimant could occasionally and frequently lift/carry less than ten pounds, needed a sit/stand option, could frequently reach, could continuously handle and finger, needed a break every one to two hours, and would miss work more than three to four times a week.   In July 2021, Dr. Greathouse wrote that the claimant's symptoms frequently interfered with his ability to pay attention and concentrate, he could sit for 30 minutes at a time, he could stand for ten minutes at a time, he needed to lie down for one hour a day, he could stand/walk for less than two hours a day, he could sit for between four and five hours a day, he must alternate between sitting and standing, he did not need an assistive device, he needed unscheduled breaks, he could occasionally lift/carry less than ten pounds, he should never lift more than ten pounds, he could reach 50% of the time with both arms, he could stoop and crouch 5% of the time, he could kneel and climb stairs 10% of the time, he would be productive for 75% or less of the time, and he would miss work three times a month.   Both of Dr. Greathouse's statements are fill-in-the-blank and check-box forms with little to no explanation of his conclusions.   Additionally, his own treatment notes do not support his recommendations. In June 2020, he noted the claimant had a normal gait and station and only mild scoliosis and recommended only continued pain management.   In November 2020, the claimant told Dr. Greathouse that his pain was well-controlled and he was "doing very well overall."   In February 2021, the claimant continued to do well with medication management of his pain. The objective testing and treatment notes from the claimant's other providers are also inconsistent with Dr. Greathouse's recommendations.   The record is more consistent with finding the claimant capable of performing light work in a setting with a sit/stand/stretch option, but he is unable to drive for work, reach overhead, crawl, and climb ladders, ropes, or scaffolds. . . .

However, I reviewed the prior administrative medical findings made by the medical consultants, Bonnie Lammers, M.D. and James Blalock, M.D., and find them to be somewhat persuasive. I reviewed the prior administrative medical findings made by the medical consultants, Bonnie Lammers, M.D. and James Blalock, M.D., and find them to be somewhat persuasive. Dr. Lammers and Dr. Blalock concluded the claimant could perform the full range of light work. New treatment notes were available at the hearing level showing a diagnosis of chronic pain syndrome. While the consultants reference the claimant's conservative treatment and his reported improvement with medication in support of their opinion, the objective testing, examinations, and the diagnosis of chronic pain syndrome are more consistent with finding additional limitations. While the claimant is capable of performing light work, his back pain justifies a sit/stand/stretch option and he is unable to crawl, drive for work, reach overhead, and climb ladders, ropes, and scaffolds due to his pain. Finally, his pain causes additional postural and environmental limitations.

In sum, the record does not provide a reasonable basis for finding a greater level of limitations than that set forth in the residual functional capacity. Consideration of the record as a whole, including the claimant's reported activities of daily living, treatment modalities, the longitudinal medical record, and the opinion evidence shows the claimant's allegations of disabling symptoms and limitations are not entirely consistent with and supported by the medical evidence and other evidence in the record. Despite his impairments, the claimant retained the ability to meet the requirements of work within the parameters of the above-noted residual functional capacity.

The ALJ made the mandatory indication of the basis for his credibility choices.

Those choices are not unreasonable. Therefore, the ALJ's finding that Wester's pain

would not prevent Wester from performing work is proper and adequately supported.

*See Carry v. Heckler*, 750 F.2d 479, 485-86 (5th Cir. 1985).

Wester complains that ALJ filed to specifically discuss his activities of daily

living, and that the ALJ's references to the administrative record are "highly

selective." However, the ALJ specifically stated that he considered Wester's activities of daily living. ECF No. 10-1 at 25. And, of course, Wester's activities of daily living and functional limitations are reflected in his own statements to his medical care providers, which the ALJ considered at length.

Moreover, the Fifth Circuit has "noted time and again" that an "ALJ is not always required to do an exhaustive point-by-point discussion" of the evidence he reviews. *J.L.J. v. Commissioner of Social Security,* 2023 WL 6209424, at *5 (W.D. La. 2023), *report and recommendation adopted,* 2023 WL 6209440 (W.D. La. 2023) (citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)). "[E]ven if an ALJ did not address every aspect of an opinion, that does not necessarily mean that he failed to consider it." *J.L.J.,* 2023 WL 6209424, at *5 (citing *Hammond v. Barnhart*, 124 Fed. Appx. 847, 851 (5th Cir. 2005)). Therefore, the ALJ's failure to reference every piece of evidence he reviewed is not an indication that he failed to review and weigh *all* of the evidence.

Because the ALJ adequately explained the reasons for his findings, substantial evidence supports the ALJ's conclusion that Wester is not disabled by pain.

## III. Conclusion

Because the Commissioner's decision is supported by substantial evidence, IT IS RECOMMENDED that the Commissioner's final decision be AFFIRMED and that Wester's appeal be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  No other briefs (such as supplemental objections, reply briefs, etc.) may be filed.  Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this ___17th___ day of May 2024.

Joseph H.L. Perez-Montes
United States Magistrate Judge